JAMES W. ABEL, PLAINTIFF, v. ZEEK BAKING COMPANY, DEFENDANT.

Decided February 26, 1926.

**Negligence—Motor Vehicle Collision—Plaintiff's Car was Slowly Entering Main Road From a Private Road—Defendant's Car Moving Rapidly on Main Road—Contributory Negligence of Plaintiff Not Proven—Verdict Not Excessive.**

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the rule, *Joseph C. Paul* and *Jacob Schneider.*

Contra, *William C. Gebhardt & Son.*

PER CURIAM.

The plaintiff obtained a verdict against the defendant, in the Hunterdon Circuit, for the sum of $6,225 for personal

injuries sustained by the former as a result of the alleged negligence of the latter's servant in so operating and driving defendant's truck upon a public highway,' as to collide with the plaintiff's automobile.

The accident occurred at an intersection of four roads, one leading from Whitehouse to Oldwick, on which the truck was traveling in a southerly direction, and the other being a private road going from the plaintiff's quarry to. Lamington and Far Hills, on which the plaintiff was riding in his Ford, going in an easterly direction. The road from the intersection to the quarry was narrow, being about eleven feet in width. There was a large triangular space on the north, east and south sides of the intersection of one hundred and seventy-eight feet by eighty-four feet. The one hundred and seventy-eight feet being measured along the Whitehouse-Oldwick road. The plaintiff says he was driving his car at a very low rate of speed, and was scarcely on the Whitehouse-Oldwick road at the intersection when his automobile was hit by the truck which was going toward Whitehouse and traveling at a high rate of speed. There were no other vehicles on the road at that time at this point. There was a motion for nonsuit, which, we think, was properly refused. The plaintiff testified: "I was coming down the road with my wife and children. We expected to go to Whitehouse to the bank, and we were early, and, consequently, driving very slow, and, as I came down, it is about seventy-five feet from the main road, that is the Whitehouse-Oldwick road, I looked to the left, and my view was clear for probably five hundred feet, and then after that the bushes obscured the vision, and I put my car in low gear, because we had lots of time and I was driving very slow when I got to within twenty or thirty feet of the main road, I blew my horn and leaned forward to see if anybody was coming. After that it was an entire blank." The plaintiff's wife testified that when they were possibly seventy-five feet from the crossing of the road the vision of the main road was obstructed for about one hundred and fifty feet by bushes which were about nine feet high, and that at that time .the car in which she and her

husband were was going very slow, not over four miles an hour. She further testified: "After we couldn't see the road any more, the main road, as we came out just to the edge of the road, we were hit with a terrible impact on our left side, a little toward the front of the car, and forced along the road just over the center, and the children screamed, and I—in front of us a truck whizzed and lurched violently and passed us and went down the road for quite some distance;" that she did not hear any horn sounded by the truck, though her huband sounded his horn when he was about twenty feet from the main road; that the car in which she was riding was shoved a distance of about twenty or thirty feet. Even upon the theory that the intersecting road was a private road out of which the plaintiff's car emerged, and that the view from it of the main road was obstructed by bushes in the direction from which the defendant's automobile was coming, these circumstances could not properly put the plaintiff or the user of the road beyond the pale of protection against the tort-feasor.

In the exercise of ordinary care, under the common law, the driver or operator of a vehicle driving along a public road cannot properly shut his eyes and ears to the conditions confronting him and thus shield himself from liability, in case of a collision, by ignoring the existence of intersecting roads, irrespective of the fact whether they be public or private, by failing to give warning of his approach or by failing to give heed to warnings of approaching vehicles likely to come out of such intersecting roads, and, in view of the further fact that there was testimony that the defendant's car was propelled at a high rate of speed, that no warning of its approach was given, that the plaintiff blew his horn when within a few feet from the intersection of the roads and was driving at four miles an hour, and that his view of the approach of the defendant's car was obscured until his, the plaintiff's car, reached the edge of the intersecting road, at which time he was placed in peril and his car was struck by the defendant's truck, which was being driven close to the edge of the road out of which the plain-

tiff's car emerged, and whereas there was an abundance of unobstructed space for the truck driver to have operated his car in, and thus have avoided a collision, hence in this posture of the case a factual question was presented which was for the decision of the jury and not for the court.

After the defendant's proof was all in, counsel, in his behalf, asked the court to direct a verdict in favor of the defendant upon the ground that the plaintiff was guilty of negligence contributing to his injury, and, therefore, debarred of a recovery. The argument to support this request is founded mainly on the fact that it appearing that the view of the plaintiff was obstructed by bushes in the direction from which the defendant's truck was coming until he reached the intersecting point of the road, and even that then, before the plaintiff could make any effectual observation in the direction from which the truck was coming, "the entire radiator portion in front of the seat would be on the road," therefore it became his duty to have stopped his car before it reached the main highway and make his observation the best he could. According to the testimony, in order for the plaintiff to obtain view, it would require him to leave his car and go on foot to the edge of the private road where it intersected with the main highway. Similar argument on behalf of the defendant was advanced in Wilson v. Kuhn, decided at the present term of this court, and not yet reported, the basis facts being somewhat similar to those under consideration, and in which case it appeared that the plaintiff was emerging upon the main highway out of a private lane or driveway, his view of the road, to some extent, was obstructed by a hedge, and this court said: "But it is fairly clear that it would not be said, as a court question, that the plaintiff was under any obligation to stop his car before coming out on the road, get out of it, and go outside the hedge on foot and look up and down the road before proceeding." The motion for a direction of a verdict for the defendant was properly denied.

Nor do we think the verdict is clearly excessive. The surgeons and physicians disagreed as to the character and seri-

ousness of the injuries sustained by the plaintiff. Under the testimony the jury was warranted in finding that the plaintiff's skull and two ribs were fractured; that he was unconscious for some time after the accident; that he had several cuts on his upper lip, extending from the edge up to the nostrils, cuts upon his chin and a cut near his eyebrow, and that he suffered from shock, and that he had become emaciated since the accident and is still suffering from the effects of his injuries, and that some of them are permanent, and that his capacity to attend to his business has become much impaired by his injuries.

The fourth reason presented for a new trial is that the court should have declared a mistrial. This ground is without merit. The defendant's counsel, on cross-examination of the plaintiff, asked him whether or not he was treated by Dr. Apgar, and the answer was "No." He wes then asked, "After the accident?" the witness answered, "I had first aid with Dr. Apgar." "Q. And then he treated you after you came back from the hospital?" "No, sir." "Q. Sure of that?" "A. He was in to see me once or twice; he said the insurance company sent him into see me, but he gave me no treatment." There was no motion made to strike out the answer as not responsive. The motion made was one addressed to the discretion of the court, namely, to declare a mistrial, which motion was refused, and we are unable to perceive that the trial judge abused sound discretion by his refusal to grant the defendant's counsel's request.

We have examined and considered the reasons presented for a new trial under points five and six of the defendant's brief and find them to be without merit.

Rule to show cause is discharged, with costs.